Richard Levy for the appellant. This is the confidential informant case. The magistrate judge and the State Attorney General apply the label speculative as if that's supposed to resolve the issue, but it doesn't. The case has recognized that some level of speculation is inherent in this procedure because defendant doesn't know who the confidential informant is and therefore has to speculate as to what information he might provide. The cases treat speculation in two distinct ways and it's important to keep them separate. Suppose you have a bank robber and the informant sees his picture on America's Most Wanted. This is the United States against Henderson case. So the informant tells the police. The defendant wants to know his identity. It's properly denied because what possible use could identity be to the case, even if the informant is the guy the defendant thinks he is? Defendant thinks he's someone who has a grudge against him. So what? The reason the defendant was convicted was because the bank tellers positively ID'd him, the surveillance video positively ID'd him. No matter how much of a grudge the informant has, it doesn't, there's no theory that it could, that could possibly help the defendant. Mr. Levy, in this particular case, following Roviaro, it seems to me that you have to show that the identity of the informant would be both helpful and relevant as you examine the numerous witnesses that your client is aware of that have ID'd him for providing drugs, possessing drugs, or most of the other things with which he is charged. How do you get around the problem of whoever this person is, that there's something that's relevant and helpful? Judge Smith, the Spires case involving the roommate, I think, is right on point there. It's purely speculative whether the roommate is the informant. The defendant doesn't have any evidence. It's just a hunch. But haven't the cases, Mr. Levy, indicated that, like in Roviaro, you had a situation where the informant was the other participant in the crime, the only witness. There's no way that the defendant there could have possibly had a fair shake without knowing who it was. Where in this case, you've got all these young women, you've got other people who were tipsters, and the cases say that that's okay, don't they? No. Judge Smith, the witnesses, we have two girls who are the witnesses. We don't know whether, at this stage, whether the four informants are affiliated to the two girls or employees. But it's pretty clear that the informants are not the girls. Is that correct? In theory, if they were, the prosecutor would have had an obligation to reveal that. As we all know, Brady violations do occur from time to time, and that would be so that's why an in-camera hearing would be an additional safeguard. So I would not say, Judge Bybee, that we can assume that the informants are not the girls, but even if they are not, they may be ex-employees with the grudge, they may be the boyfriends. Kevin pops in this case. In fact, in this case, as I recall, the first informant's information came before the girls even met your client. That's true. At the beginning of July. That's true, Judge Smith. So in that setting, at least with respect to what the girls said, your client would get no benefit at all from whatever might be produced from an in-camera identification of the informant, right? The girls may be part of the process. If they're going to try to get back at Edashami, they're going to follow along with what the other employees with the grudge are doing. They're not going to invent some entirely new implausible story. They're going to say, Aha, this guy's under suspicion. Here's our way to add our two cents. So even though the information came at the beginning of July, that does not keep the case. And I would add, Judge Smith, it may be the first informant was totally unrelated to this case, and he was correct that there was some drug dealing. That doesn't necessarily tie it to Edashami. It could be some rogue employee who's dealing meth over the counter with a pizza box. It's the other three. We don't know what the date. It may have been late July after the girls were fired. It's the other three who tied in Edashami, and that's what raised the possibility that But you've got a theory sort of without any basis for it. I mean, it's always possible that somebody has conspired. But that would be possible in every case that you could say, Well, I just want to know whether somebody's conspiring against me. But here, that's the distinction between the Spires case and some of these other cases like Henderson. In Spires, the roommate had access, and presumably he had a motive. Now, do you have somebody who has access and has a motive that you can identify? Any ex-employee. But any ex-employee is a very, very broad category. It's true. At least in Spires, we can say, I'm going to give you a name. Would you tell me if this guy's on the list? Because if this guy's on the list and is the informant, I want to tell you that he's got a good motive, and he had full opportunity to try and frame me. Now, did you go to the judge and say, Here's a list of three people that we think might have reason to want to frame Edashami. And if those folks are on the list, then we would like to have, we would like to know about it. Well, first, Judge Bybee, he wasn't given an opportunity because the judge immediately denied the motion. But if I could go back to Spires, you're right, Judge Bybee, that Spires is a stronger case because we know this is the guy. But let me cite another case that's far weaker than our case. That's the Amador Galvan case cited in the opening brief. This is the guy who drives his car with drugs across the border. When he's stopped by customs, he runs away back across the border before the police find the drugs. They catch him a couple weeks later. His defense is he wasn't the driver. Here, he does not, there are four confidential informants. We know that. The defense has no idea not only who they are, but are they even precipient witnesses? No idea. And yet this circuit in Amador Galvan said that's enough because if they are precipient witnesses or, carrying it further, if they know, if they can lead to admissible evidence that they know who the precipient witnesses are, that's enough for Amador Galvan's claim. Counsel, even if I thought that Amador Galvan was relevant here, we're up here on a deeper review. How do you get to it? Okay. The Court of Appeal decision was an unreasonable application of the law for two reasons. A clearly established law under Obama. Tell me what the law was. Tell me what Supreme Court case California just blew through. They just didn't, they didn't read the case, or if they read it, they just didn't understand it at all, and it was obvious to them, and they made a huge mistake. So what's the case? Well, the underlying case is Rovial. And as we know, this circuit's opinions interpreting the clearly established Federal law are also irrelevant to determine what the clearly established Federal law is. But not for purposes of habeas, are they, Mr. Levy? Yes. Doesn't it have to be the Supreme Court's decisions that are on the issue? I would say, Judge Smith, Brahas v. Weiss decided in one of the briefs that even for purposes of AEDPA, this circuit's interpretations of what's clearly established is relevant. Okay. Would you give me the page in Rovial that you think, or the paragraph that you think that we're in, that California was in violation of? I cannot do that. But what I can do, Judge Breyer, because what I can do is cite Murdoch v. Castro, which is this circuit's case discussed in the reply brief. Murdoch v. Castro is the case where there was a letter from a witness to his attorney, confidential attorney-client privilege, and the question was, should that have been revealed? It's sort of analogous to the confidential informant case. This Court said, how can we possibly determine whether the State court violated clearly established Federal laws announced by the Supreme Court unless we know exactly what is said in that letter? So it remanded down to the district court to find that letter, and then it could make a reasoned decision. That's precisely the case here. Roviaro announces the rule that the right, the Sixth Amendment right to knowing this witness trumps the confidential informant privilege. But a corollary, or implied by that rule, is you've got to have a mechanism so that defendant can make his claim that the informant is relevant. But the burden is on your client under Roviaro, is it not? Yes, yes, yes. And I would submit that this is an even stronger case on the facts. Let me aside Edpun for a moment, than Amador-Galvan, and somewhat similar to Spires. So were the State court wrong with clearly established Supreme Court law? I'm sorry, I know I'm over my time. I'm looking at Roviaro, counsel, and I've got a paragraph here that says, we believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest, protecting the flow of information against the individual's right to prepare his defense. It must depend on the particular circumstances of each case. How could California possibly have clearly violated that rule? Because they clearly violated it, Judge Bidey, because the relevance to the defense is obvious. Everyone knows that drugs are sometimes planted. He claimed that that had to happen. But that rule, counsel, would then say that in every drug case, you would be entitled to see the confidential form, unless you can give the district court, the trial court, some reason. Well, you're not entitled to see the informant, Judge Bidey. Right. You're entitled to have a hearing and have the judge look at it. And there's a reason why the threshold is so low, Judge Bidey, and that's because the procedure is so quick and easy. All the judge has to do is go into chambers, see the name and the identifying information of the informant. But again, this goes back to the question I asked you earlier, counsel. If you can go to the trial judge and say, are any of the following three names on that list? Because if they are, we have things that we think you ought to know. Because these folks are people that Mr. Edashami has had a long, ongoing feud with, who have made threats to him, and are quite capable of framing him. And we would have special concerns if those people were on there. Now, at that point, the hearing is easy to conduct. But if you can't come forward with anything more than a theory that says, well, we know that in drug cases, sometimes people get framed. This is a drug case. Ergo, it's possible my client got framed. That logic is so broad that it counsels for this kind of procedure in every drug case. He provided far more to Judge Bidey. He specified ex-employees who were accused of stealing. He specified employees have access to this office because the key's in the register. It's – I would agree with you, Judge Bidey, that at some point, all he has to do is give the names of people he suspects, and that might well be sufficient. Although there might be other people allied with the two girls who he may not know. But all that is done in the in-camera hearing. As Fires says, sometimes the attorney is entitled to be present at the in-camera hearing. He could say, yeah, Edashami told me these are the names. There's a name. I recognize that name. Or he could even just provide a list of names of ex-employees. That's all done at the hearing stage, but here there was a peremptory denial saying you haven't made a sufficient showing even for that. I think the implication is I'm not even going to look at your piece of paper because you haven't made a sufficient showing. If the court were going to look at the paper, it would have held an in-camera hearing because you can't look at the paper without also looking at the identity of the informants. So I would not agree, Judge Bidey, that this opens the floodgates to every, every drug case. And there are plenty of cases cited in the briefs where framing is simply not an issue, even if the defendant has suspicion. For example, the Pruitt case where the guy's a pilot. Roberts. Thank you for answering my question. You're well over your time. I'm sorry. Thank you. Ms. Maxwell. May it please the Court, Margaret Maxwell, on behalf of Gordon Suarez. This is not a confidential informant case on direct supervisory review. This is an EDPA case, a case where we have to look to determine whether the California courts applied the appropriate governing law and whether the application of a law to the facts was reasonable. And in this case, it was. I believe my opposing counsel has mixed some of the, has mixed the two issues that are here. This Court certified two separate questions, whether the failure of the trial court to conduct in-camera review violated petitioner's federal constitutional rights. And then whether the failure to disclose the identity of the confidential informant, the citizen informant, violated his federal constitutional rights. There is no existing United States Supreme Court precedent that required the trial court to conduct an in-camera review in this case. Roviaro is existing U.S. Supreme Court precedent that talks about disclosure. So most of petitioner's focus is on the in-camera review, which I think is understandable because the question presented to the trial court was one of complete and utter speculation. It was one essentially putting the cart before the horse, as you will. I'm not going to, I'm going to say maybe there's a disgruntled employee. I'm not going to name a disgruntled employee. But if you tell me, if you give me a name that turns out to be an employee, that's going to turn out to be a disgruntled employee. I mean, that's what this has the flavor of. It's the government's position, I gather, that if the Supreme Court has not ruled on all fours on an issue, in this case the in-camera review, that the defendant's just out of luck. If the state Supreme Court obviously can't follow something, it doesn't exist. Is that correct? That is correct. The principles are fairly well defined. We need a Supreme Court case that sets forth a law as applicable to the facts. Now, so for the in-camera review, there is no U.S. Supreme Court precedent. The, for the disclosure question, Riviera sets out a test, but it's a very broad test. It is one that is described by the court as a balancing that has to be examined on a case-by-case basis, and it sets out a variety of factors. Those particular factors are, you know, ones where you look to the crimes charged, the possible defenses, the significance of the informer's testimony. Now, in looking at Riviera itself, there you have an informer who's the sole participant in the drug crime, crimes that are charged. He is, some of the defendant's statements to that particular informant are used against him at his trial, and he's the only, the informant is the only other person, besides the defendant, who could provide some sort of contradictory testimony about those statements. And there was also the additional interesting fact of the government, that particular informant, when brought to the police station with the defendant, makes some sort of statement that he doesn't even know who the defendant is. And so I think that's a significant, you know, other relevant factor that the court and Riviera look to to say disclosure seems to be warranted. We don't have any of those facts here. We have tipsters who are providing information, very generalized information. None of them, although they claim that, you know, drugs are being, you know, dealt from this particular business, they don't say where they're kept, how they're kept. They don't provide any specific details. They are, those tips are ultimately completely unrelated to the two counts of furnishing to the minor victims, because those particular counts rely utterly upon the testimony and credibility of those two minor girls. And as far as the possible defenses, again, I think the idea that, you know, framing could be a defense in drug crime is one where I think that the conspiracy theory can always be raised. But here what we needed was for Petitioner to name someone. And he had plenty of opportunity to do so. He filed a written motion. He had, he actually had several written motions. He had a motion to quash the warrant, a motion to traverse the warrant. Those were both heard by a different judge than the one who ultimately heard the disclosure motion and then conducted the trial. In the motion to quash and traverse, no name is given. When the motion for disclosure comes up for a ruling, there is argument. He was given an opportunity to provide a name. And interestingly, Petitioner's counsel doesn't really even forward the disgruntled employee theory. That's something that I think the prosecutor was trying to just anticipate what an employee, you know, mention, you know, maybe that's what he's going to argue because that's what he had said something about the motion to quash. What instead he says is, oh, maybe they're, you know, maybe it's somebody else. You know, it's just a general person. We don't know what they were going to say. That's what he says, we don't know. He essentially concedes that this is a speculative fishing expedition for a name. Under these circumstances, the trial court in no way can be said to have unreasonably applied Riviera. It's a balancing test, and he made the balance. Even if this court were to conclude that the trial court was wrong, that's not the end of the story. It's under the ADPA, that application of the law of effects must be unreasonable. Reasonable jurors can't disagree about it, and this is a judgment call. I think reasonable jurors, you know, frankly, I don't think reasonable jurors could disagree about this particular one. I think that it was an easy call to say that disclosure was not made. Again, what we have here is the court of appeal below in the state court applied the application of the law of the facts here. Petitioner had opportunity to present something more than mere speculation. He did not, and that should result in the affirmance of the district court's dismissal of the writ. I did, on one final note, I wanted to say that this case is not Barajas, and it's not Murdoch, which were referenced in the reply brief. In Murdoch, the trial court reviewed the letter from the prosecuting witness in camera. That was a case where a prosecuting witness wrote a letter that provided some exculpatory information. That bare information was provided to the parties. The trial court reviewed the letter in camera and said, I'm not going to disclose this to the defense. This particular case is different because we didn't have the in-camera review, and then now the question is, having not had the in-camera review, did that itself violate the defendant's federal constitutional rights? So in fact, given the Roviaro test, you're saying that this defendant had several opportunities to come forward with potentially relevant names to meet the test, failed to do so, and under that circumstance, there's no way that he meets the test for even disclosure, let alone in-camera review. Exactly. Exactly. Again, I think the disclosure test is the primary and initial test that needs to be examined. He doesn't meet that by any stretch of the imagination, and they don't really need to go to the in-camera review. This case is also not Barajas. That particular case concerned where the informant testified, I believe it testified at the defendant's trial, and the question was whether or not the addresses of the informant should have been disclosed. And the generalized language in that case that talks about how you can look to this court's cases as persuasive authority isn't applicable to the in-camera review test here. I mean, there they were looking at Roviaro, they were looking at other applicable U.S. Supreme Court precedent to give broader application. Unless the court... So, at the end of the day, your position is that until the Supreme Court adopts this circuit's jurisprudence on the issue of in-camera, that the state court cannot violate that legal standard under AEDPA. That's my position. It doesn't mean that state courts can't conduct in-camera review. They do. State law does provide for it. It's just that here we can't have a reversal, a grant of the writ, based on the absence of an in-camera review. Not on that alone. Thank you, Your Honor. Thank you, Ms. Maxwell. Mr. Levy, you've consumed all of your time, and you have something that we have not heard. I'll allow you one more minute. Thank you, Judge Levy. The Attorney General brought up Murdoch against Castro. I believe that that case stands for the principle that if you have a fundamental federal right announced by the Supreme Court as a corollary, there must also be a mechanism for vindicating that. The mechanism in the case of confidential informants is an in-camera hearing. Murdoch said we can't determine whether the California Court of Appeal unreasonably applied the law because they never looked at an informant, at what the letter was, so they had no way to balance the attorney-client privilege against the Sixth Amendment right. That's really the same posture here. Although Roviaro says nothing about an in-camera review, that's simply the mechanism for vindicating a Roviaro right, and that falls within AEDPA just as in Murdoch against Castro. Thank you. Thank you, Mr. Levy. Thank both counsel for the argument. And Ashanti v. Suarez then is submitted.
judges: Bybee, Smith, Mills